1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   SAN FRANCISCO BAY AREA RAPID          Case No.  14-cv-01866-JSC
    TRANSIT DISTRICT,

8                    Plaintiff,
                                          OPINION RE: PHASE ONE BENCH
9        v.                               TRIAL

10  GENERAL REINSURANCE                   Re: Dkt. Nos. 35, 36
    CORPORATION,

11                   Defendant.

12

13         Defendant General Reinsurance Corporation ("General Reinsurance") issued an excess

14  insurance policy to Plaintiff San Francisco Bay Area Rapid Transit District ("BART"), which is a

15  self-insured employer for workers' compensation.  This dispute arises out of a multiple myeloma

16  workers' compensation claim of a former BART employee, Michael Gonsolin ("Gonsolin"),

17  which BART settled with Gonsolin before the Workers' Compensation Appeals Board ("WC

18  Appeals Board").  BART contends that General Reinsurance is obligated to pay the claim because,

19  as stipulated by the parties before the WC Appeals Board, and found by the WC Appeals Board,

20  Gonsolin's injury occurred during the policy period, and BART has reached its retention limit

21  triggering General Reinsurance's coverage.  General Reinsurance contends that it has no

22  obligation to pay because Gonsolin's injury in fact occurred after its policy had ended.

23         The parties agreed to resolve their dispute in a bench trial based upon stipulated facts.  In

24  Phase One the Court must decide whether the parties can litigate the date of injury; that is, whether

25  for purposes of the application of the excess policy, General Reinsurance is bound by the decision

26  of the WC Appeals Board.  After carefully considering the parties' submissions (Dkt. Nos. 35,

27  36), and having had the benefit of oral argument on May 28, 2015, the Court finds that under the

28  circumstances here General Reinsurance is not bound in this breach of contract action by the date

of injury that the WC Appeals Board found.

## BACKGROUND[1]

### A.    The Policy at Issue

BART is self-insured for workers' compensation claim purposes.  It nonetheless purchases excess insurance to cover claims that exceed a particular amount.  General Reinsurance issued BART an Excess Insurance Policy For Self-Insurer Of Workers' Compensation and Employers Liability Policy (the "Policy"), effective July 1, 1985 through July 1, 1992.  Under the Policy's terms, BART had a $500,000 retention on workers' compensation claims, meaning that BART was obligated to pay the first $500,000 and General Reinsurance was obligated to indemnify BART up to $10,000,000 in excess of that retention.  (*See* Dkt. No. 34-1 at 1.)[2]  The Policy applies to "losses paid by" BART for "bodily injury by disease," provided

> the bodily injury or disease is caused or aggravated by the conditions of employment by the Insured.  The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force.

(*Id.* at 3.)  When the Policy ended in 1992, BART obtained an excess insurance policy with a different insurer, but with the same retention amount.  Beginning in 2002 and through the present, BART's excess insurance policies have had a much higher retention amount.  (Dkt. 34-3.)

### B.    Gonsolin's Workers' Compensation Claim

Michael Gonsolin worked as a BART police officer from 1979 to 2005, except for 1985 to 1987, when he worked as a detective.  Gonsolin retired in 2005, and in October 2006 he was diagnosed with multiple myeloma.  The following month Gonsolin filed an Application for Adjudication of Claim in WC Appeals Board Case No. SFO 0499837 (the "myeloma case").  Gonsolin claimed that he was entitled to workers' compensation benefits due to his cumulative

---

[1] The following facts are taken from the parties' Stipulated Facts (Dkt. No. 29), the Exhibits attached thereto (Dkt. No. 34), and the docket of this case.

[2] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

United States District Court
Northern District of California

1    exposure to carcinogens, specifically benzene,[3] while employed as a BART police officer.  In his

2    application, he listed the date of injury as "CT [cumulative trauma]" through October 13, 2006.

3    (Dkt. No. 34-40 at 168.)

4              California's workers' compensation statutory scheme provides that "liability for

5    occupational disease or cumulative injury" is limited to the employer who employed the claimant

6    "during a period of four years immediately preceding either the date of injury, as determined

7    pursuant to Section 5412, or the last date on which the employee was employed in an occupation

8    exposing him or her to the hazards of the occupational disease or cumulative, injury, whichever

9    occurs first."  Labor Code § 5505.5(a).  Labor Code Section 5412, which governs the date of

10   injury for occupational diseases or cumulative injury, defines date of injury as "that date upon

11   which the employee first suffered disability therefrom and either knew, or in the exercise of

12   reasonable diligence should have known, that such disability was caused by his present or prior

13   employment."  *Id.* § 5412.  "The fact of injury (exposure) and the date of injury (disability), by

14   definition, are not equivalent in cases involving the latent effects of an occupational disease."  *See*

15   *Chevron U.S.A., Inc. v. WC Appeals Bd.*, 219 Cal. App. 3d 1265, 1271 (1990).

16             Special rules govern defining and proving injury when the occupational injury is cancer

17   developed by peace officers exposed to carcinogens known to cause cancer.  Labor Code § 3212.1.

18   Under such circumstances, California law provides that "[t]he cancer so developing or manifesting

19   itself in these cases shall be *presumed* to arise out of and in the course of employment."  *Id.*

20   § 3212.1(d) (emphasis added).  The presumption relates to the connection between the exposure

21   and the disease, not to a particular date of injury.  *See Faust v. San Diego*, No. SDO 244774, 68

22   Cal. Comp. Cases 1822, 2003 WL 23148877, at *6-7 (W.C.A.B. Dec. 11, 2003) (en banc).  The

23   "presumption is disputable and may be controverted by evidence that the primary site of the

24   cancer has been established and that the carcinogen to which the member has demonstrated

25   exposure is not reasonably linked to the disabling cancer[,]" but "[u]nless so controverted, the

26

27   ---
     [3]  Benzene is "a component of products derived from coal and petroleum and is found in gasoline
28   and other fuels."  *Benzene*, Occupational Safety & Health Admin., *available at*
     https://www.osha.gov/SLTC/benzene/ (last visited June 24, 2015).

United States District Court
Northern District of California

1    [WC Appeals Board] is bound to find in accordance with the presumption." *Id.*  In *Ennis v. BART*,

2    72 Cal. Comp. Cases 1694 (2007), the WC Appeals Board held that the Section 3212.1 cancer

3    presumption applies to BART police officers.

4          On January 26, 2007, Athens Administrators, BART's workers' compensation claims

5    administrator, denied Gonsolin's claim, concluding that his "claim for cancer does not fall within

6    the presumptions under Labor Code[ Sections] 3213.5 and 3212.6 . . . and there is no medical

7    evidence to indicate that [his] cancer is related to [his] employment." (Dkt. No. 34-39 at 17.)  The

8    matter then proceeded through the WC Appeals Board.  On March 23, 2007, Gonsolin was

9    deposed in connection with his myeloma case, and on April 19, 2007, Dr. Revels Cayton, a board-

10   certified internal medicine and pulmonary disease specialist chosen to be the Agreed Medical

11   Examiner ("AME") assigned to the case, issued a report regarding Gonsolin's condition.  Among

12   other things, Dr. Cayton found that "Mr. Gonsolin's multiple myeloma has reasonably been

13   caused by his benzene exposure in the workplace." (Dkt. No. 34-14 at 8.)  Dr. Cayton was

14   deposed on August 23, 2007 and testified that the average latency period for multiple myeloma is

15   8 to 10 years. (Dkt. No. 34-15 at 4; *see also* Dkt. No. 34-37 at 15 ("[T]he average latency is

16   probably eight to ten years.  It can extend out, and it can be shorter, but eight to ten years would

17   cover most bases.").)  Discovery in Gonsolin's myeloma case closed on October 12, 2007.

18         Later that month, BART's claims administrator reviewed a study from September and

19   October 2007 that concluded, in relevant part, that there were no detectable levels of benzene

20   present at any BART facilities and that "BART Police Sergeants are not exposed to Benzene in the

21   course of their work." (Dkt. No. 34-18 at 1.)  BART thereafter filed a petition for removal to

22   reopen discovery in the Gonsolin myeloma case to further depose Dr. Cayton about that study;

23   specifically, BART argued that Dr. Cayton's analysis was "flawed" insofar as he had relied on

24   inaccurate data about benzene levels in BART facilities to reach the conclusion that Gonsolin's

25   benzene exposure caused his myeloma. (*See* Dkt. No. 34-19 at 5.)  BART further contended that

26   Dr. Cayton was "cajoled" by Gonsolin's attorney to find that Gonsolin had been exposed to

27   "threshold levels" of benzene that caused his disease. (*Id.*)  On November 19, 2007, the WC

28   Appeals Board judge rejected those arguments and issued a report recommending that the petition

United States District Court
Northern District of California

4

1    be denied.  (Dkt. No. 34-21 at 5.)

2         Also in November of 2007, the California Court of Appeal denied a petition for writ of

3    review of the decision in *Ennis v. BART*, 72 Cal. Comp. Cases 1694 (2007), in which the WC

4    Appeals Board had held that the Labor Code Section 3212.1 cancer presumption applies to BART

5    police officers.  In the wake of that decision, BART's attorney noted that it would have "a very

6    difficult time prevailing on a question of" whether Gonsolin's myeloma is a condition arising out

7    of and occurring in the course of his employment.  (Dkt. No. 34-22 at 2.)

8         BART thereafter sought to settle Gonsolin's myeloma claim.  The proposed settlement

9    involved, among other things, obtaining Dr. Cayton's opinion on the date of injury.   On

10   December 5, 2007, BART provided its excess insurer for injuries occurring in 2002 and later (not

11   defendant General Insurance) a First Notice of Loss that represented the date of injury was

12   October 13, 2006.  (Dkt. No. 34-25.)  The next day, Dr. Cayton issued a letter to BART and

13   Gonsolin, regarding the date of injury, in which he states that "[t]he latency period for Mr.

14   Gonsolin's myeloma is fifteen years" . . . therefore "exposures prior to 1991 were injurious."

15   (Dkt. No. 34-26.)

16        On December 14, 2007, BART and Gonsolin reached an agreement and presented

17   settlement terms to the WC Appeals Board, which thereafter entered a Partial Order Approving

18   Compromise and Release with Open Medical Award and Partial Compromise and Release.  The

19   order was partial insofar as the WC Appeals Board reserved jurisdiction over an outstanding lien

20   claim pertaining to certain medical expenses.  (*See* Dkt. No. 34-27 at 3-4.)  The agreement

21   resolved the dispute for $200,000 and stated in relevant part that the "[p]arties stipulate there is a

22   dispute re[garding] date of injury, but based upon new medical information contained within Dr.

23   Cayton's [Agreed Medical Examiner] report of [December 6, 2007], [the] parties stipulate to a

24   date of injury of . . . [November 1, 1990 to October 31, 1991], pursuant to [Labor Code

25   §] 5500.5."  (*Id.* at 5.)  Hearing minutes from the proceeding approving the settlement likewise

26   reflect that "[t]he parties stipulate that there is a dispute regarding the date of injury[,] but based

27   upon the recent medical information set forth by Dr. Cayton . . . the parties now stipulate to a date

28   of injury described as cumulative trauma from November 1, 1990 through October 31, 1991

United States District Court
Northern District of California

5

1    pursuant to Labor Code section 5500.5." (Dkt. No. 34-28 at 3.)

2    **C.      BART/General Reinsurance Reimbursement History**

3            One week after the settlement was approved, Athens claims supervisor Jan Ramacciotti

4    sent a Notice of Claim via email to Genesis Underwriting Management Company ("Genesis"), the

5    entity authorized to receive the claim on General Reinsurance's behalf.  This Notice of Claim was

6    nearly identical to the one sent to the later excess insurer, but it listed October 31, 1991 as the date

7    of injury instead of October 13, 2006. (Dkt. No. 34-29 at 2.)  The Notice of Claim itself did not

8    indicate that Gonsolin continued to work for BART through 2005.

9            Genesis did not respond to the first notice or to Ramacciotti's follow-up email of January

10   2008, so Ramacciotti called Genesis and spoke with claim examiner Edith Coutinho on February

11   25, 2008.  In March and April of 2008, Ramacciotti and Coutinho spoke about the claim again.

12   According to Ramacciotti's notes, on March 17, 2008, Coutinho requested "just an update" and

13   materials from Dr. Cayton, not the entire universe of medical and legal documents.  (Dkt. No. 34-8

14   at 2.)  In response, on March 21, 2008, Ramacciotti provided case documents to Coutinho,

15   including a status report from defense counsel that mentioned latency but did not state outright

16   that Gonsolin continued to work for BART through 2005.  (Dkt. No. 34-31.)  Defense counsel's

17   summary represented that "the applicant, a police officer, sustained multiple myeloma/cancer as a

18   result of his cumulative exposure to carcinogens through October 13, 2006." (*Id.* at 1.)  In

19   addition to defense counsel's report, Ramacciotti provided Dr. Cayton's deposition, medical

20   report, and his December 6 letter regarding date of injury; and the WC Appeal Board's order

21   approving the settlement.   The attached report of Dr. Cayton states that Gonsolin "worked as a

22   police officer for BART from 1979 until September 11, 2005." (Dkt. No. 34-31 at 8.)  Athens sent

23   Genesis the award itself on April 4, 2008.  (Dkt. No. 34-34.)

24           In September of 2008, Coutinho emailed Ramacciotti noting that she still had not received

25   the documents requested in March 2008.  In response, by the first week of October an Athens

26   claims examiner sent the full legal and medical file in Gonsolin's case, which Genesis received by

27   October 7, 2008.  This file included Dr. Cayton's deposition, which repeatedly mentions that

28   Gonsolin worked for BART through 2005. (*See, e.g.*, Dkt. No. 34-37 at 35; Dkt. No. 34-39 at 27;

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Dkt. No. 34-40 at 141; Dkt. No. 34-41 at 23.)  The file also included a letter from defense counsel

2   from December 2007 indicating that Dr. Cayton had revised his opinions regarding the applicant's

3   date of injury, and that both he and the WC Appeals Board judge concluded that the date of injury

4   was prior to 1991.  (Dkt. No. 34-38 at 40-41.)

5           On October 7, 2008, Coutinho requested further information about Gonsolin's current

6   medical condition.  Athens' response email noted that the outstanding medical lien likely would

7   exceed BART's payment ceiling and, accordingly, would require General Reinsurance to pay out

8   on the policy, and therefore resolution of the lien claims would require General Reinsurance's

9   agreement.  To that end, Athens sent Genesis a Settlement Authority Request, noting that

10  Gonsolin's medical bills to date were nearly $700,000, and noting that monies paid beyond

11  $500,000 were subject to reimbursement from General Reinsurance as the excess carrier.  On

12  September 17, 2009, an Athens claims administrator wrote to Coutinho requesting reimbursement

13  from General Reinsurance in the amount of $212,077.28, as Gonsolin's total medical bills had

14  reached $712,077.28.  The following month, Athens received a reimbursement check for BART

15  from General Reinsurance for $192,535.02.  A year later, Athens requested further reimbursement

16  of $73,021.75 for Gonsolin's continued myeloma treatment, and on December 14, 2010 General

17  Reinsurance reimbursed BART $64,422.97.  In August of 2011 Athens submitted a third

18  reimbursement request on BART's behalf, this time seeking $130,000 for indemnity and

19  $697,987.55 for medical claims, less the prior reimbursements.  In November of 2011, General

20  Reinsurance sent BART $70,112.11 in further reimbursement.  In total, General Reinsurance

21  reimbursed BART for medical expenses in the amount of $327,070.10.

22          It was not until January 27, 2012 that General Reinsurance notified BART and Athens that

23  it had "no obligation under the Policy with respect to the Gonsolin Claim" and was therefore

24  "entitled to reimbursement from BART of $327,070 previously paid on the claim."  (Dkt. No. 34-

25  51 at 1.)  BART has continued to administer the Gonsolin claim, and since August of 2011 it has

26  paid approximately $300,000 in excess of its $500,000 self-insured retention that General

27  Reinsurance has not reimbursed.

28

**D.     Procedural History**

BART initiated this breach of contract action in Alameda County Superior Court on January 24, 2014.  Thereafter General Reinsurance removed to matter to federal court, and the Court denied BART's motion to remand.  (Dkt. No. 16.)  In March 2015, the Court agreed to the parties' stipulation to try this matter in two phases.  In Phase One, the Court will determine based on stipulated facts whether the "date of injury" is subject to litigation in this action or whether General Reinsurance is bound by the WC Appeals Board finding.  If it is so bound, then General Reinsurance must indemnify BART.  If BART prevails on the Phase One issue, then in Phase Two the Court will determine whether BART is entitled to attorneys' fees.  If, on the other hand, General Reinsurance prevails at Phase One, then at Phase Two the Court instead will determine whether the date of injury falls within General Reinsurance's policy period.  (*See* Dkt. No. 28-1.) The parties' Phase One briefing is now before the Court.

### DISCUSSION

The Court must decide whether General Reinsurance is bound by the date of injury identified in the WC Appeals Board's compensation award.  General Reinsurance advances a host of reasons why the workers' compensation judge did not make a correct factual determination about the date of injury, and even if she did, why the decision was wrong due to errors that BART and Gonsolin made regarding the law, misrepresentations they purportedly made to the workers' compensation judge, and the judge's improper adoption of a medical opinion that, in General Reinsurance's view, lacked sufficient support in medical evidence.  But these arguments all put the proverbial cart before the horse: at this stage of the litigation, the question is not whether the date of injury was wrong or why that might be the case; rather, the question is only whether General Reinsurance can seek to establish a different date of injury in this breach of contract action.  BART argues that the Court has no jurisdiction to change the date of injury that the WC Appeals Board determined, and even if it does, General Reinsurance is nonetheless barred from asserting a different date of injury now.

**A.     The Court has Jurisdiction to Make a Factual Finding About the Date of Injury**

There is no dispute that this federal court has diversity jurisdiction of this state law breach

United States District Court
Northern District of California

8

of contract this action.  BART instead argues that the Court lacks jurisdiction to find a different date of injury from that found by the WC Appeals Board for a variety of reasons.  The Court disagrees.

       1.    *In this Context, Date of Injury is Not Within the WC Appeal Board's Exclusive Jurisdiction*

      Labor Code Section 5300 defines the "exclusive jurisdiction" of the WC Appeals Board, and provides in relevant part that all of the following proceedings "shall be instituted before the [WC Appeals Board] and not elsewhere":

> (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto.
>
> (b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon the employer by this division in favor of the injured employee[.]
>
> . . .
>
> (e) For obtaining any order which by Division 4 the [WC Appeals Board] is authorized to make.
>
> (f) For the determination of any other matter, jurisdiction over which is vested by Division 4 in the Division of Workers' Compensation[.]

Labor Code § 5300.  Section 5300 is limited to claims involving compensation to the employee.  In *Millman v. Contra Costa Cnty.*, W.C.A.B. No. ADJ1527953, 2013 Cal. Wrk. Comp. P.D. LEXIS 615 (Appeals Bd. noteworthy panel decision), *summarized at* 79 Cal. Comp. Cases 439, 2014 Cal. Wrk. Comp. LEXIS 32 (Dec. 13, 2013), a WC Appeals Board panel held that it does not have jurisdiction to resolve a contract dispute between a self-insured employer and its excess insurer.  In other words, the panel held that Division Four of the Labor Code (the workers' compensation statutory scheme, including Section 5300) is limited to disputes involving workers' compensation claims, including claims against workers' compensation policies.  An excess insurance policy, however, is not a workers' compensation policy and thus not subject to Division Four.  *Id.*[4]  This holding makes sense.  Indeed, BART initiated its breach of contract action against

---

[4] The WC Appeals Board designated *Millman* a "significant panel decision."  Although such decisions are citable authority, they are not binding precedent, but are deemed persuasive by the

United States District Court
Northern District of California

1    General Reinsurance in state court because it, too, does not believe that the exclusive jurisdiction

2    of Labor Code Section 5300 applies to its contract action.

3          The real question, then, is whether this Court has jurisdiction to make a finding in a

4    contract action that is contrary to a finding made by the WC Appeals Board.  While perhaps not

5    optimal, and a situation to be avoided if possible, BART offers no authority that supports its

6    assertion that this Court is without jurisdiction to do so.  BART tries to reframe the question as

7    whether the Court has jurisdiction to "alter" or "change" the finding of the WC Appeals Board.

8    But this Court is not reviewing any decision of the WC Appeals Board, and any decision the Court

9    makes will not affect the WC Appeals Board's decision as to the compensation BART, as a self-

10   insured employer, owes its former employee.  Put simply, regardless of this case's outcome,

11   BART will remain liable to Gonsolin as a self-insured employer even if it is determined that

12   General Reinsurance is not the proper excess carrier because the date of injury fell outside of the

13   Policy period.

14         It follows, then, that BART's argument that 28 U.S.C. § 1257 deprives this Court of

15   subject matter jurisdiction also fails.  Section 1257 states that "federal review of state court

16   judgments can be obtained only in the United States Supreme Court."  True.  But this Court is not

17   reviewing the WC Appeals Board order and is not and will not review the decision awarding the

18   claimant benefits from BART.  Instead, this case is limited to a breach of contract dispute between

19   BART and General Reinsurance.  The same fate applies to BART's reliance on Labor Code

20   Section 5302 as depriving this Court of jurisdiction to decide the date of injury for purposes of

21   BART's breach of contract claim.  Section 5302 merely speaks to the finality of WC Appeals

22   Board orders.  Again, this action is not about the WC Appeals Board order, and this Court has no

23   jurisdiction to review that order.  This action is only about BART's breach of contract action

24   against General Reinsurance.

25

26   ─────────────────────────

27   WC Appeals Board.  *See Guitron v. Santa Fe Extruders*, WCAB No. ADJ163338, 76 Cal. Comp.
     Cases 228 n.7 (2011).  The WC Appeals Board's decisions, and summaries thereof, are authority
     "to the extent that they point out the contemporaneous interpretation and application of the
28   workers' compensation laws by the [WC Appeals Board]."  *Victor Valley Transit Auth. v. WC
     Appeals Bd.*, 83 Cal. App. 3rd at 1075 n.9 (2000) (citation omitted).

United States District Court
Northern District of California

1    The Court similarly rejects BART's assertion that pursuant to the *Rooker Feldman*

2  doctrine this Court lacks jurisdiction to decide the date of injury.  *Rooker-Feldman* prohibits

3  federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto

4  appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1126, 1139 (9th Cir.

5  2004).  The *Rooker-Feldman* doctrine bars subject matter jurisdiction in federal district court if "a

6  federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks

7  relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th

8  Cir. 2003); *see also ScripsAm., Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1137 (C.D.

9  Cal. 2014) ("A losing party in state court is thus barred from seeking what in substance would be

10  appellate review of a state judgment in federal district court[.]" (citation omitted)).  Put another

11  way, if "adjudication of the federal claims would undercut [a] state ruling, the federal [claim] must

12  be dismissed for lack of subject matter jurisdiction." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898

13  (9th Cir. 2003).  *Rooker-Feldman* also bars a defendant from asserting a substantive defense that

14  attacks a state court judgment. *See MacKay v. Pfeil*, 827 F.2d 540, 544-45 (9th Cir. 1987).  But

15  this action does not attack the WC Appeals Board order; thus *Rooker-Feldman* does not apply.

16    Moreover, *Rooker-Feldman* cannot be applied against anyone who was not a party to the

17  state court action, *see So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir. 2002) ("The

18  *Rooker-Feldman* doctrine does not bar the exercise of federal court jurisdiction when the federal

19  court litigant was not a party to the state court action.") (citation omitted), even if the party against

20  whom the doctrine is asserted is in privity to a party to the earlier action, *see Lance v. Dennis*, 546

21  U.S. 459, 466 (2006); *see also Bennett v. Yoshina*, 140 F.3d 1218, 1224 (9th Cir. 1998) ("[M]ere

22  participation in the state case . . . does not invoke the *Rooker/Feldman* bar.").  Thus, because

23  General Reinsurance was not a party to the WC Appeals Board proceedings, *Rooker-Feldman*

24  does not bar these claims.  What is more, the doctrine does not apply to suits seeking review of

25  state *agency* action. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287

26  (2005) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 544 n.3 (2002)).

27  Thus, even though the WC Appeals Board decision was final, it was a final agency decision and

28  therefore the *Rooker-Feldman* bar does not apply for this additional reason.

United States District Court
Northern District of California

1     The conclusion that this action will not affect BART's obligations to Gonsolin is consistent

2   with those cases holding that the courts, as opposed to the WC Appeals Board, have exclusive

3   jurisdiction over contract and tort actions for damages that relate to an underlying workers'

4   compensation action.  *See La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27,

5   35 (1994); *see also Scott v. Indus. Acc. Comm.*, 46 Cal. 2d 76, 82-83 (1956) ("[T]he superior court

6   cannot award workmen's compensation benefits, and the [WC Appeals Board] cannot award

7   damages for injuries."); *U.S. Fidelity & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1135

8   (9th Cir. 2011) (WC Appeals Board lacks jurisdiction over actions by a workers' compensation

9   insurer against the insured-employer for rescission and reimbursement of policy proceeds); *Victor*

10  *Valley Transit Auth. v. WC Appeals Bd.*, 83 Cal. App. 4th 1068, 1070 (2000) (superior court, not

11  WC Appeals Board, has jurisdiction over contribution action by one city against another for

12  reimbursement payment of works' compensation benefits); *Salimi v. State Comp. Ins. Fund*, 54

13  Cal. App. 4th 216, 218 (1997) (holding that the superior court has jurisdiction over employer's

14  suit against workers' compensation insurer for breach of contract for failure to defend a workers'

15  compensation claim).

16     BART's reliance on *General Reinsurance Corp. v. WC Appeals Board* ("*St. Jude Joinder*

17  *Case*"), No. A092380, 65 Cal. Comp. Cases 1441 (2000), is misplaced.  After the employer, St.

18  Jude, and the claimant had reached a settlement, the claimant sought to obtain penalties from St.

19  Jude for late payments.  The penalties were likely to exhaust St. Jude's retention with its excess

20  insurer, General Reinsurance; accordingly, St. Jude sought successfully to join General

21  Reinsurance to the workers' compensation proceeding.  In denying General Reinsurance's writ

22  petition, the California Court of Appeal held that an excess insurer may be joined to a workers'

23  compensation proceeding pursuant to Labor Code Section 3753, which permits an injured worker

24  to join "any insurer," and Section 5307.5(b), which authorizes the joinder of "all persons

25  interested in the proceeding."  *Id.* at 1444.  Thus, *St. Jude* stands for the proposition that an excess

26  insurer may be a party to a workers' compensation proceeding; it does not in any way support

27  BART's argument that when neither the employee nor the employer joins the excess insurer, a

28  civil court is without jurisdiction to adjudicate any facts that were adjudicated in the workers'

1    compensation proceeding.

2                                    *   *   *

3          Accordingly, the Court is not stripped of its jurisdiction to make a factual determination

4    regarding the date of injury to resolve the parties' coverage dispute.  Because this action it pertains

5    exclusively to whether General Reinsurance is obligated to indemnify BART and has no effect on

6    Gonsolin's statutory right to workers' compensation for myeloma that the WC Appeals Board

7    determined arose out of his employment, the Court has jurisdiction to decide the date of injury for

8    purposes of General Insurance's contractual obligations.

9    **B.      General Reinsurance May Litigate a Change in Date of Injury**

10         BART next contends that, even if the Court has jurisdiction to determine the date of injury,

11   General Reinsurance is nonetheless barred from litigating it on the grounds of (1) issue preclusion,

12   (2) equitable estoppel, (3) waiver, and (4) laches.  Unfortunately for BART, none of these

13   arguments succeeds.

14         1.      *Issue Preclusion Does Not Apply*

15         BART's issue preclusion argument hinges on workers' compensation statutory sections

16   pertaining to administrative and judicial review of matters within the WC Appeal Board's

17   exclusive jurisdiction.  Specifically, Labor Code Section 5804 provides that "[n]o award of

18   compensation shall be rescinded, altered, or amended after five years from the date of the injury

19   except upon a petition by a party in interest filed within such five years and any counterpetition

20   seeking other relief filed by the adverse party within 30 days of the original petition raising issues

21   in addition to those raised by such original petition."   BART contends that General Reinsurance,

22   as a "party in interest," "could have submitted a petition for relief under Section 5804, and having

23   failed to do so, is bound to the WC Appeal Board's date of injury determination due to claim

24   preclusion.

25         As a preliminary matter, General Reinsurance is not seeking in this action (which, in any

26   event, was filed by BART) to rescind, alter, or amend the award of compensation to Gonsolin.

27   Thus, Section 5804 simply does not apply.  Apart from Section 5804, however, the Court

28   interprets BART's argument as being that because the "date of injury" was actually litigated in the

13

1    workers' compensation proceedings, and General Reinsurance could have participated in those

2    proceedings, its defense in this action is barred by issue preclusion.  Not so.

3          "Collateral estoppel, or issue preclusion, precludes relitigation of issues argued and

4    decided in prior proceedings." *Myocogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002)

5    (internal quotation marks and citation omitted).  "The doctrine applies only if the decision in the

6    initial proceeding was final and on the merits and the issue sought to be precluded from

7    relitigation is identical to that decided in the first action and was actually and necessarily litigated

8    in that action." *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990).  In addition, the party against

9    whom preclusion is sought must be the same as, or in privity with, the party to the first action.  *Id.*

10   In other words, even where the second cause of action is not barred by claim preclusion, judgment

11   in an earlier case can "operate[ ] as an estoppel or conclusive adjudication as to such issues in the

12   second action as were actually litigated and determined in the first action" between the same

13   parties.  *Branson*, 24 Cal. App. 4th at 345 (citation omitted); *see also Johnson v. City of Loma

14   Linda*, 24 Cal. 4th 61, 78 (2000) (listing the elements of collateral estoppel as "identity of issues,

15   finality of the decision, and identity or privity of the party against whom estoppel is sought");

16   *Segal v. AT&T Co.*, 606 F.2d 842, 845 (9th Cir. 1979).

17         Issue preclusion may operate as a bar to litigation of an issue that was decided in an earlier

18   administrative proceeding "if the agency, acting in a judicial capacity, resolved disputed issues of

19   fact properly before it, in a proceeding in which the parties had an adequate opportunity to litigate

20   the factual issues" and "where the time for seeking judicial review of the administrative decision

21   through a petition for writ of mandate had expired without such review being sought." *Johnson*,

22   24 Cal. 4th at 78 (citing *People v. Sims*, 32 Cal. 3d 468, 484-86 (1982)).

23         Issue preclusion does not apply here because General Reinsurance was not in privity with

24   BART in the workers' compensation proceedings.  To determine privity, "courts examine the

25   practicalities of the situation and attempt to determine whether [the parties] are sufficiently close

26   . . . to afford application of the principles of preclusion." *Armstrong v. Armstrong*, 15 Cal. 3d 942,

27   951 (1976) (internal quotation marks and citation omitted).  Privity may be established by "a

28   mutual or successive relationship to the same rights of property, or to such an identification in

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    interest of one person with another as to represent the same legal rights." *Citizens for Open*

2    *Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1069 (1998) (internal

3    citations omitted).  Privity "has also been expanded to refer to . . . a relationship between the party

4    to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as

5    to justify application" or preclusion.  *Id.* at 1069-60.  Privity will be found where the two parties

6    have a "sufficient commonality of interests."  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe*

7    *Regional Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (citations omitted).

8          Here, the WC Appeals Board proceedings involved Gonsolin versus BART, while the

9    instant action involves BART versus General Reinsurance.  Plainly, General Reinsurance was not

10   a party to the earlier proceedings.  Nor does General Reinsurance have a sufficient commonality of

11   interest with BART to find the two parties in privity.  Indeed, instead of having an "identification

12   in interest . . . [so] as to represent the same legal rights[,]" *Seadrift Ass'n*, 60 Cal. 4th at

13   1069, BART and General Reinsurance had competing interests in the prior proceedings: it was in

14   BART's interest to settle the compensation claim with Gonsolin and trigger whatever excess

15   policy had the lowest retention so that BART would pay as little as possible out of its own

16   pockets; in contrast, it was in General Reinsurance's interest to avoid indemnity altogether,

17   regardless of whether the WC Appeals Board found Gonsolin's claims compensable.

18         California courts have reached similar conclusions when it comes to co-insurers' interests

19   in underlying WC Appeals Board proceedings.  For example, in *Chartis Insurance v. WC Appeals*

20   *Board*, 75 Cal. Comp. Cases 891 (2010), a California Court of Appeal determined that an insurer

21   and insured's stipulated date of injury is not binding on a later contribution action between the two

22   insurers, nor does claim preclusion bar the newly added insurer from litigating the date of injury in

23   the later contribution action.  The court emphasized that an earlier date of injury is not binding on

24   later contribution proceedings in part because the nonelected defendants' rights—*i.e.*, those

25   insurance carriers not named in the initial workers' compensation action—"are not fully

26   represented in the original proceeding."  *Id.* at 893.  Likewise, even in successive proceedings all

27   before the WC Appeals Board, courts have held that liability findings premised on the WCJ's

28   findings of fact based on stipulations between the claimant and insured employer are not binding

15

United States District Court
Northern District of California

1  on subsequent contribution proceedings between insurers for the simple reason that the other

2  insurers who were not named as defendants in the earlier proceedings were not fully represented in

3  the WC Appeals Board proceedings.  *See, e.g.*, *id.* at 894; *Fremont Comp. Ins. Grp. v. WC Appeals*

4  *Bd.*, 64 Cal. Comp Cases 1400, 1999 Cal. Wrk. Comp. LEXIS 5701, *3-4 (1999) (workers'

5  compensation insurers are free to relitigate date of injury determinations in contribution and

6  insurance coverage arbitrations); *Rex Club v. WC Appeals Bd.*, 53 Cal. App. 4th 1465, 1472

7  (1997) (insurers are free to relitigate liability in contribution proceedings).

8        In its argument for issue preclusion, BART ignores the well-established requirements for

9  privity—*i.e.*, a sufficient commonality of interest— and instead insists that issue preclusion will

10  apply when three factors (protection against vexatious litigants; furtherance of finality where

11  public interests are involved; and promotion of stability of adjudications of prior actions) favor its

12  application.  (Dkt. No. 35 at 26 (citing *Lynch v. Glass*, 44 Cal. App. 3d 943, 947-48 (1975)).)  But

13  the *Lynch* court listed those factors as examples where issue preclusion had applied, and still noted

14  that privity, at bottom, comes down to "whether a nonparty was 'sufficiently close' to an

15  unsuccessful party in a prior action as to justify the application of collateral estoppel against the

16  nonparty."  44 Cal. App. 3d at 948 (citations omitted).  BART and General Reinsurance have no

17  such sufficiently close relationship; if anything, their positions in the WC Appeals Board

18  proceedings were antagonistic.  Accordingly, issue preclusion does not bar General Reinsurance

19  from litigating the date of injury.

20        BART's arguments to the contrary are unpersuasive.  First, its argument is premised on its

21  misplaced insistence that General Reinsurance was subject to mandatory administrative exhaustion

22  of the WC Appeal Board's decision under Section 5804.  But the Court already rejected this

23  argument.  Moreover, the cases on which BART relies miss the mark.  *Ford v. Providence*

24  *Washington Insurance Co.*, 151 Cal. App. 2d 431 (1957), merely holds that "an insurer who has

25  had an opportunity to defend is bound by the judgment against its insured as to all issues which

26  were litigated in the action against the insured."  *Id.* at 436.  But General Reinsurance, as BART's

27  excess insurer, had no obligation to defend BART against Gonsolin's claim.  *Ford*  is simply

28  inapplicable.  *Clemmer v. Hartford Insurance Company*, 22 Cal. 3d 865, 872, 886 (1978), is

inapplicable for the same reason.  It, too, involves an insurer who had the opportunity to defend its insured but chose not to do so.  *Id.* at 886.  Notably, in both cases each insurer was in privity with its insured: each had the exact same interest in defending the claim against the insured.  Here, such privity is plaining lacking.  As General Reinsurance was not in privity with BART, claim preclusion does not bar litigation of the date of injury in the context of this breach of contract suit.

    2. *General Reinsurance is not Equitably Estopped from Litigating the Date of Injury*

    BART next asserts that General Reinsurance should be equitably estopped from litigating the date of injury.  The doctrine of equitable estoppel, also known as promissory estoppel, "is founded on concepts of equity and fair dealing.  It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment."  *City of Goleta v. Super. Ct.*, 40 Cal. 4th 270, 279 (2006) (internal quotation marks and citation omitted).  The elements of equitable estoppel are:  "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  *People v. Castillo*, 49 Cal. 4th 145, 155 n.10 (2010) (citations omitted).  "One aspect of equitable estoppel[,]" and the particular brand that BART advances, "is codified in Evidence Code section 623, which provides that whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."  *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 181 Cal. App. 4th 175, 186-87 (alterations and citations omitted); *see also Strong v. Cnty. of Santa Cruz*, 15 Cal. 3d 720, 725 (1975) (noting that the doctrine of equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such a belief to his detriment").  The existence of estoppel is a question of fact, *Gen. Motors Acceptance Corp. v. Gilbert*, 196 Cal. App. 2d 732, 742 (1961), and the party asserting estoppel bears the burden of proving it, *see Domarad v. Fisher & Burke, Inc.*, 270 Cal. App. 2d 543, 556 (1969).

United States District Court
Northern District of California

1       In insurance disputes, "the doctrines of implied waiver and of estoppel, based upon the

2   conduct or action of the insurer, are not available to bring within the coverage of a policy risks not

3   covered by its terms, or risks expressly excluded therefrom." *Supervalu, Inc. v. Wexford*

4   *Undewriting Mgrs., Inc.*, 175 Cal. App. 4th 64, 77 (2009).  Thus, to the extent that the date of

5   injury falls outside General Reinsurance's excess coverage policy, BART cannot use equitable

6   estoppel to find that it does.  For this reason, alone, estoppel does not apply.

7       Even if such affirmative equitable estoppel usage was permitted, BART cannot not avail

8   itself of the doctrine here.  The first element of equitable estoppel requires that the party to be

9   estopped is apprised of the facts—*i.e.*, has knowledge of the facts.  *Castillo*, 49 Cal. 4th at 155

10  n.10.  Conversely, there can be no equitable estoppel where the party asserting equitable estoppel

11  misrepresents the true facts, such that the party to be estopped was not apprised of the true facts.

12  *See, e.g.*, *Stokes v. Bd. of Permit Appeals*, 52 Cal. App. 4th 1348, 1357 (1997) (rejecting plaintiff's

13  argument that defendant should be estopped from revoking building permits where the plaintiff

14  misrepresented true facts about the use of the property).  However, "negligence satisfies the

15  element of knowledge."  *Green v. MacAdam*, 175 Cal. App. 2d 481, 487 (1959) (citation omitted).

16      This is the element to which the parties devote the most significant attention, disputing

17  whether General Reinsurance possessed sufficient information about Gonsolin's employment and

18  Dr. Cayton's medical opinion to understand that the October 1991 date of injury was stipulated to

19  based on Gonsolin's employment with BART through 2005 and Dr. Cayton's 15-year latency

20  determination.  By March of 2008 General Reinsurance had received documents that clearly

21  indicated that Gonsolin worked at BART through 2005.  (*See, e.g.*, Dkt. No. 34-31 at 1 (noting

22  that Gonsolin "sustained multiple myeloma/cancer as a result of his cumulative exposure to

23  carcinogens through October 13, 2006"); *id.* at 8 ("Mr. Gonsolin has worked as a police officer for

24  BART from 1979 until September 11, 2005.").)  Likewise, the documents received in March also

25  reflect the parties' stipulation and the WC Appeal Board's acceptance of the parties' agreement

26  that Gonsolin's myeloma had a 15-year latency period.  (Dkt. No. 34-31 at 2 (quoting the WC

27  Appeal Board's decision as noting that "[h]aving considered the reports of Dr. Cayton, I find that

28  the latency period for Mr. Gonsolin's myeloma is 15 years.  Therefore, looking back from the date

18

of diagnosis in 2006, I am persuaded that Dr. Cayton is correct in setting forth the exposures prior to 1991 as being injurious causing the injury herein.").)  By October of 2008, General Reinsurance received even more documents that reflected Gonsolin's 2005 retirement, his 2006 date of diagnosis, and the 15-year latency period stipulation.  (*See, e.g.*, Dkt. No. 34-37 at 41.)[5]  General Reinsurance had also received Dr. Cayton's deposition testimony, which reflected his earlier statement that the average latency period for myeloma was between 8 and 12 years.  (*See* Dkt. No. 34-37 at 15.)  The Court thus finds that the first estoppel element is satisfied.  That General Reinsurance perhaps did not fully assess the documents before it does not preclude equitable estoppel, but rather suggests that General Reinsurance was negligent in reviewing the information before it.  *See Green*, 175 Cal. App. 2d at 487.

The second element is that the party to be estopped had an intent that his conduct would be acted upon.  *Carillo*, 49 Cal. 4th at 155 n.10.  "The defendant need not intend to deceive the plaintiff to give rise to an equitable estoppel."  *Superior Dispatch, Inc.*, 181 Cal. App. 3d at 1295 (citation omitted); *see also Domarad*, 270 Cal. App. 2d at 555 ("Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel." (internal quotation marks and citations omitted)).  Rather, "[t]o create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss."  *Id.* (internal quotation marks and citation omitted).  Here, when General Reinsurance actually reimbursed BART three times for the compensation BART paid Gonsolin above and beyond BART's retention, General Reinsurance induced BART to believe that General Reinsurance would not be challenging the date of injury determination and its coverage.  BART relied on General Reinsurance not challenging the date of injury and its coverage by not pursuing another excess coverage insurer.  Thus, the Court finds that the element of intent is satisfied.

---

[5] For a comprehensive list of the fifteen different documents that General Reinsurance possessed by October 2008 referring to the 2006 date of injury and 2005 date of retirement, *see* Docket No. 40 at 14.

United States District Court
Northern District of California

1    The third element of estoppel is that the party asserting estoppel is ignorant of the true

2   facts.  *Carillo*, 49 Cal. 4th at 155 n.10.  This element requires that the party asserting equitable

3   estoppel not only lacked actual knowledge of the true facts, but also did not have notice of the

4   facts sufficient to put a reasonably prudent person on inquiry notice.  *Life v. Cnty. of Los Angeles*,

5   227 Cal. App. 3d 894, 902 (1991).  Here, this would mean that BART was ignorant of facts that

6   give rise to the possibility that General Reinsurance might challenge the date of injury or deny

7   coverage.  This is where BART's equitable estoppel argument fails.  The Court finds that BART

8   had knowledge that there was a dispute over the date of injury; indeed, the WC Appeal Board's

9   order approving the settlement even stated as much.  (*See* Dkt. No. 34-27 at 5.)  Moreover, prior to

10  giving notice of the settlement to General Reinsurance, BART gave notice to a different excess

11  insurer, Midwest, suggesting that Midwest would cover the excess compensation payments based

12  on a later date of injury.  (*See* Dkt. No. 34-25.)

13    Nor can BART show that it has been harmed by General Reinsurance's conduct.  BART

14  can still report the claim to another excess coverage insurer, as late notice of a claim is not a

15  defense to coverage absent prejudice.  *See Safeco Ins. Co. of Am. v. Parks*, 170 Cal. App. 4th 992,

16  1004 (2009).  Thus, BART has not established that equitable estoppel bars General Reinsurance

17  from litigating the date of injury now.

18    3.    *General Reinsurance Did Not Waive Challenge to the Date of Injury*

19    Next, BART contends that General Reinsurance waived its right to litigate the date of

20  injury issue because it failed to challenge the issue before the WC Appeals Board.  Under

21  California law, waiver is "the intentional relinquishment or abandonment of a known right."

22  *Bickel v. City of Piedmont*, 16 Cal. 4th 1040, 1048 (1997) (citations omitted), *abrogated on other

23  grounds by DeBerard Props, Ltd. v. Lim*, 20 Cal. 4th 659, 668 (1999).  Waiver is a question of

24  fact, *Bickel*, 16 Cal. 4th at 1052, and always is based upon the parties' intent, *Waller v. Truck Ins.

25  Exch., Inc.*, 11 Cal. 4th 1, 31 (1995).  The party claiming waiver must "prove it by clear and

26  convincing evidence that does not leave the matter to speculation, and doubtful cases will be

27  decided against a waiver."  *Waller*, 11 Cal. 4th at 31 (internal quotation marks and citations

28  omitted).  "The waiver may either be express, based on the words of the waiving party, or implied,

20

based on conduct indicating an intent to relinquish the right." *Id.* (citation omitted). In the insurance context in particular, California courts have applied a particularly high bar for demonstrating waiver, noting that denial of coverage on one ground does not impliedly waive denial on the basis of grounds not stated in the denial. *See id.* (citations omitted); *see also State Farm Fire & Cas. Co. v. Jioras*, 24 Cal. App. 4th 1619, 1628 n.7 (1994). Further, just as with equitable estoppel, a party cannot use implied waiver to establish coverage where none exists. *Supervalu, Inc.*, 175 Cal. App. 4th at 77. For this reason alone BART's implied waiver argument fails.

Even if implied waiver were available, it does not apply. BART argues implied waiver based upon General Reinsurance's failure to seek to rescind, alter or amend the WC Appeals Board's award of compensation or to file a petition for relief to the WC Appeals Board pursuant to Labor Code Section 5804, and its failure to seek contribution pursuant to Labor Code Section 5500.5. The Court cannot infer General Reinsurance's intent to waive a challenge to the date of injury determination from its failure to engage in an administrative challenge to the WC Appeal Board's compensation award as it has already determined that General Reinsurance was not obligated to do so.

Thus, BART has failed to establish by clear and convincing evidence that BART intended to relinquish its right to challenge the date of injury determination and contest coverage.

4.      *Laches Does Not Bar General Reinsurance From Litigating the Date of Injury*

Finally, laches does not bar General Reinsurance from litigating the date of injury. Laches is an equitable defense that bars a claim when there is "unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 77 (2000). Laches is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared[.]" *Brown v. State Pers. Bd.*, 166 Cal. App. 3d 1151, 1161 (1985). Any delay is measured from the time the plaintiff knew or should have known about the alleged claim. *Magic Kitchen LLC v. Good Things Int'l Ltd.*, 153 Cal. App. 4th 1144, 1157 (2007). "Prejudice is never presumed;

21

1   rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of

2   proof and the production of evidence on the issue." *Miller v. Eisenhower Med. Ctr.*, 27 Cal. 3d

3   614, 624 (1980).  The prejudice may be factual in nature or compromise the presentation of the

4   defense." *Drake v. Pinkham*, 217 Cal. App. 4th 400, 406 (2013) (citation omitted).  Put another

5   way, "[c]ourts have recognized two chief forms of prejudice in the laches context—evidentiary

6   and expectations-based." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001) (citation

7   omitted).  Evidentiary prejudice "includes such things as lost, stale, or degraded evidence, or

8   witnesses whose memories have faded or who have died." *Id.*  Expectations-based prejudice

9   occurs when a party "show[s] that it took actions or suffered consequences that it would not have,

10  had the plaintiff brought suit properly." *Id.* (citation omitted).

11          Normally, laches applies to bar a particular cause of action from moving forward, not to

12  bar a particular defense.  *See Miller*, 27 Cal.3d at 624 (noting that the "affirmative defense of

13  laches requires unreasonable delay *in bringing suit*" (emphasis added))  But here, BART contends

14  that laches bars General Reinsurance from asserting in this breach of contract action that BART

15  brought a date of injury different from the WC Appeal Board's date of injury determination.  The

16  Court finds that laches does not apply to this situation.  Laches here is just another way of arguing

17  equitable estoppel, an issue the Court has already rejected.

18                                          *   *   *

19          BART has failed to establish that any legal doctrine bars General Reinsurance from

20  litigating the date of injury in the context of this breach of contract dispute.  General Reinsurance

21  was not obligated to seek to change the date of injury determined in the WC Appeals Board

22  proceedings, and its failure to do so does not preclude it from litigating that issue now.  To be

23  sure, a date of injury determination in this action may be inconsistent with the stipulated date of

24  injury accepted in the WC Appeals Board proceedings, but an inconsistent determination will not

25  disturb Gonsolin's statutorily-owed compensation.  Moreover, the Court's finding does not mean

26  an excess insurer will never be bound by findings of fact made in workers' compensation

27  proceedings.  An employer may seek to join its excess insurer to a workers' compensation

28  proceeding.  *See Millman*, 79 Cal. Comp. Cases at 439; *St. Jude Joinder Case*, 65 Cal. Comp.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Cases at 1444.  If it successfully does so, the excess insurer may be prohibited by issue preclusion

2   from litigating in a subsequent coverage dispute with its insured issues decided in the workers'

3   compensation action.  But General Reinsurance was not joined, or even sought to be joined, to the

4   workers' compensation proceedings here.  Thus, it is not bound by the WC Appeals Board finding

5   of date of injury.

6                                       **CONCLUSION**

7          For the reasons described above, the Court concludes that it has jurisdiction to make a

8   factual determination regarding the date of injury in the context of this breach of contract suit and

9   that General Reinsurance is entitled to litigate the date of injury.  This Order constitutes the

10  findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a)(1).

11         Because the Court has answered the Phase One questions in General Reinsurance's favor,

12  this matter shall proceed to Phase Two, in which the parties may actually litigate the date of injury

13  and the Court will make a final coverage determination.  The parties shall submit by July 8, 2015,

14  a proposed schedule for Phase Two, including deadlines for the exchange of medical expert

15  reports and a suggested date for the one-day bench trial.

16         **IT IS SO ORDERED.**

17  Dated:  June 24, 2015

18

19

20  JACQUELINE SCOTT CORLEY
    United States Magistrate Judge

21

22

23

24

25

26

27

28